Argued September 22, reversed with instructions November 26, petition for rehearing denied December 21, 1971, petition for review denied January 18, 1972

HENRY L. JONES, *Respondent, v.* CUPP, *Appellant.*

490 P2d 1038

*Jim G. Russell,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief

were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

Petitioner pleaded not guilty on April 27, 1970, to a first degree murder indictment filed on February 26, 1970, in Marion County. On May 7, 1970, he waived a grand jury indictment on a charge of second degree murder and pleaded guilty to that same charge. The guilty plea followed lengthy, unsuccessful negotiations to permit him to plead to involuntary manslaughter. Petitioner was sentenced to 15 years and in the post-conviction hearing raised successfully the question before us on this appeal: Is a guilty plea knowingly and voluntarily entered if a seven-year parole ineligibility is not known to the defendant? Should the parole ineligibility be considered a legal consequence of the plea?

The post-conviction court found that Jones had not been advised by either his attorney or the court that he would not be eligible for parole until he had served a minimum sentence of seven years for the second degree murder conviction.[1] The post-conviction court then stated:

"Under ordinary circumstances, it would be

---

[1] ORS 144.230(2):

"(2) No person serving a sentence in the state penitentiary for murder in the second degree is eligible for release on parole until he has served at least seven years of his sentence."

irrelevant whether or not a defendant was advised regarding the matter of parole, but in the case of murder, where the Legislature has made an exception to the general rule of indeterminate sentences by establishing a mandatory minimum which must be served, the failure of a defendant to be made aware of his ineligibility for parole renders a plea of guilty involuntary."

■ In Oregon there is a constitutional right to be advised of the basic legal consequences of a guilty plea. As we noted in *Fletcher v. Cupp,* 1 Or App 467, 463 P2d 365 (1969), Sup Ct *review denied* (1970), quoting from *Lay v. Cupp,* 1 Or App 296, 462 P2d 443 (1969):

"A defendant accused of crime has a constitutional right to be advised before a guilty plea of the basic legal consequences of the plea, including the maximum penalty assessable under the charge * * *." 1 Or App at 471.

The same result has also been reached in *Nealy v. Cupp,* 2 Or App 240, 467 P2d 649 (1970), citing the earlier case of *Dixon v. Gladden,* 250 Or 580, 585, 444 P2d 11 (1968).

The question whether a defendant must be advised of parole ineligibility has not previously been resolved in Oregon. There is a division of authority among the federal appeals courts. Those that require that a defendant be advised of parole ineligibility hold that this is a consequence of a guilty plea, and that for the plea to be voluntary, the defendant must have been advised of this consequence of his plea. *Bye v. United States,* 435 F2d 177 (2d Cir 1970); *Harris v. United States,* 426 F2d 99 (6th Cir 1970); *Jenkins v. United States,* 420 F2d 433 (10th Cir 1970); *Durant v. United States,* 410 F2d 689 (1st Cir 1969);

*Berry v. United States,* 412 F2d 189 (3d Cir 1969); and *Munich v. United States,* 337 F2d 356 (9th Cir 1964).

The other line of federal cases reasons that ineligibility for parole is not "a 'consequence' of a plea of guilty," but a matter of legislative grace.

"* * * [N]on-eligibility for parole is not a 'consequence' of a plea of guilty * * * rather it is a consequence of the withholding of legislative grace." Smith v. United States, 324 F2d 436, 441 (1963), *cert denied* 376 US 957, 84 S Ct 978, 11 L Ed 2d 975 (1964).

*Trujillo v. United States,* 377 F2d 266 (5th Cir 1967), *cert denied* 389 US 899, 88 S Ct 224, 19 L Ed 2d 221 (1967), is to the same effect. In *Spradley v. United States,* 421 F2d 1043 (5th Cir 1970), the defendant had pleaded guilty to a narcotics offense for which he was precluded from parole. The sentencing judge through inadvertence impliedly suggested to defendant that he would be eligible for parole after he had served one-third of his time. On appeal the court announced that the rule in *Trujillo* ought not to be extended beyond its bare facts and held that defendant was entitled to vacation of the sentence and plea in the light of the misinformation given by the trial court. Thereafter in *Onick v. United States,* 425 F2d 1292, 1293 (5th Cir), *cert denied* 400 US 846, 91 S Ct 92, 27 L Ed 2d 83 (1970), the court again, following *Trujillo,* said:

"In *Trujillo,* we held that Fed. R. Crim. P. Rule 11[⑨] does not require that the defendant be in-

---

⑨ Rule 11, Pleas, 18 USCA 557 (As amended, effective July 1, 1966). In pertinent part:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse

formed of his ineligibility for parole before a guilty plea can be accepted. We reaffirmed that holding in Sanchez v. United States, 5 Cir. 1969, 417 F.2d 494. Therefore, we affirm * * *."

It is necessary to draw a line as to what must be told a defendant as the "basic legal consequences" of his plea of guilty. The cases seem to agree that effects such as loss of passport, deportation, loss of voting privileges and undesirable discharge are "too remote." The court in *Durant v. United States,* supra, said:

"* * * [These matters are] collateral consequences, civil in nature, while parole goes directly to the length of time a defendant is to be incarcerated." 410 F2d at 692.

But other matters go to the length of time a defendant may be incarcerated. For example, the Oregon statute entitled, "Factors considered by board in granting parole," provides that good conduct and efficient performance of duties assigned in the state penitentiary (ORS 144.250) are to be considered by the board in granting parole. This bears on the length of incarceration. Should the court be required to advise a defendant of the terms of this statute? More to the point, in Oregon if the offense to which a defendant has plead guilty is not his first felony conviction, then he is in line to be proceeded against under the habitual criminal act for enhancement of his sentence. This would be a consequence that could directly affect the length of detention. Should it be the obligation

to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily and with understanding of the nature of the charge and the consequence of the plea. * * *"

of the court to attempt to 'cover all the bases' and advise him of the possibility of the application of the habitual criminal act in his case?

■■ We think the proper place to draw the line for which the court is responsible to a defendant on the advice of the basic consequences of his plea is with the information as to the maximum sentence which may be imposed. *See also, Sali v. Warden,* 87 Nev 41, 482 P2d 287 (1971), and *Stocks v. Warden,* 86 Nev 758, 476 P2d 469 (1970). We note that in the federal cases holding that parole ineligibility is not "a 'consequence' of a plea of guilty" (*Smith, Trujillo, Onick*), writs of certiorari have been uniformly denied. This tends to support our conclusion that pleading guilty without being informed as to parole ineligibility raises no constitutional issues.

The judgment of the post-conviction court is reversed with instructions to dismiss the petition for post-conviction relief.

FORT, J., dissenting.

I am persuaded to the opposite view by the reasoning in the cases so holding set forth in the majority opinion.