459 P.2d 448 (1969)
Lorance Omer Victor ENDSLEY, Appellant,
v.
Hoyt C. CUPP, Warden, Oregon State Penitentiary, Respondent.
Court of Appeals of Oregon.
Argued and Submitted July 8, 1969.
Decided October 3, 1969.
*449 J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause and filed the brief for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.
David H. Blunt, Salem, argued the cause for respondent. On the brief were Helen B. Kalil, Asst. Atty. Gen., and Robert Y. Thornton, Atty. Gen., Salem.
Before SCHWAB, C.J., and LANGTRY, FOLEY, FORT and BRANCHFIELD, JJ.
BRANCHFIELD, Judge.
In 1950 the petitioner pleaded guilty to the crime of second degree murder. This is a proceeding for post-conviction relief, wherein he contends that his confession and plea of guilty were not voluntarily made. The post-conviction court held a hearing and denied the petition. Petitioner claims error in the court's findings of voluntariness.
On August 15, 1950, petitioner was taken into custody by two Multnomah County deputy sheriffs. Upon his arrival at the Multnomah County Courthouse he was immediately interrogated about the killing of one Howard Kingsland. The questioning continued until late afternoon of August 17, with the petitioner being given time out to sleep, to eat meals, and to consult with a Catholic priest. Several persons, perhaps as many as twelve, took part in the interrogation. The first time petitioner saw an attorney was on August 17, after he had confessed to the killing.
The trial court in the instant case was faced with direct conflicts of testimony. Petitioner claims that during the course of his interrogation he asked Howard Kelly, Captain of the Detective Division of the Multnomah County Sheriff's Department, for an attorney and for a doctor. He said he was hit on the head and kidneys four or five times by Officer Kelly's bare hand. Kelly testified, and denied that any request for a doctor or for an attorney was made to him. He also denied striking the petitioner. There were no bruises or other marks on Endsley's head or body. When he was taken to a doctor, he did not complain that he had been struck. The witnesses agree that petitioner asked Kelly for permission to go see a priest, and Kelly arranged for him to do so.
Petitioner testified that he told all three of his court-appointed attorneys that he was slapped around while being interrogated, that he was denied an attorney and that he was denied a doctor until after he confessed. He further testified that all three attorneys, his mother and the priest advised him to enter a plea of guilty to a charge of second degree murder.
Although petitioner claims that Officer Kelly urged him to enter a plea of guilty, he denied that he pleaded guilty because the officer told him to. He further testified that his guilty plea was not based upon his attorney's advice but upon his mother's advice. He said that he pleaded guilty to second degree murder because he was afraid of the gas chamber if convicted of first degree murder. His last attorney indicated to him that a plea of guilty to a charge of second degree murder would be a compromise plea.
Petitioner here first consulted with an attorney on August 17, 1950. That attorney was later appointed to represent him. He was indicted on the 29th day of September. *450 He was arraigned on October 3. He appeared in court with his two court-appointed attorneys on October 13. At that time he entered a plea of not guilty of the crime of first degree murder. On November 16 his two court-appointed attorneys resigned. His third attorney was appointed on November 24. That attorney saw petitioner almost daily. On December 5, 1950, petitioner, accompanied by his attorney, appeared in court and entered a plea of guilty to the charge of second degree murder. No challenge was made to the competence of counsel, and the post-conviction court made a finding that counsel was competent.
Petitioner first contested the validity of his conviction in 1956, when he filed a petition for a Writ of Error Coram Nobis in the circuit court for Multnomah County. The court denied the writ, and on appeal the Oregon Supreme Court held that an order denying a petition for a Writ of Error Coram Nobis was not an appealable order. State v. Endsley, 214 Or. 537, 331 P.2d 338 (1958). In July 1966, Endsley filed a petition for post-conviction relief in the circuit court for Marion County. In that petition he contended that his confession was coerced and that he did not voluntarily and understandingly enter his plea. He stipulated to the dismissal of the petition without prejudice because the Public Defender informed him that the Oregon Supreme Court's decision in Richardson v. Williard, 241 Or. 376, 406 P.2d 156 (1965), precluded any possibility that he would obtain relief in post-conviction proceedings. In December 1966, Endsley filed a Petition for Habeas Corpus in the United States District Court for the District of Oregon. That court ruled that Richardson did not prevent consideration of his claim, and that he must pursue his remedies under state law before seeking relief in the federal court. In this proceeding, for the first time, petitioner's claim of coercion is presented in a manner permitting its consideration upon the merits.
Richardson v. Williard, supra, involved a claim by Richardson that he had failed to appeal his conviction, based upon a guilty plea, because he was ignorant of his right to appeal. At page 378, 406 P.2d at page 158 the court said:
"* * * Whether or not defendant knew the confession was admissible was irrelevant because the plea of guilty with the advice of counsel was a judicial admission of all the material allegations of the indictment in a most indisputable form * * *."
We agree with the United States District Court that Richardson does not preclude relief in every case, but we are convinced that this defendant has not made a case requiring that he be set free.
The post-conviction court resolved the conflicting evidence gainst Endsley, and found affirmatively that he failed to prove his confession was in fact coerced, and further found that petitioner's plea of guilty was freely and voluntarily entered and was not the result of nor tainted by the prior confession. We are not authorized to retry disputed questions of fact in post-conviction cases where there is evidence to support the trial court's findings. In Alcorn v. Gladden, 237 Or. 106, 111, 390 P.2d 625 (1965), the Oregon Supreme Court said,
"* * * These findings of the trial court on the issues of fact are conclusive. ORS 138.650 provides that the scope of our review in post-conviction proceedings is `the same as that provided by law for appeals in criminal actions.' ORS 138.220 provides that in criminal actions `the judgment or order appealed from can be reviewed only as to questions of law appearing upon the record' * * *."
Boykin v. Alabama (June 2, 1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, was decided after briefs were filed herein, but was discussed in the oral arguments. We do not interpret that case as requiring a reversal here. Boykin was indicted on *451 five counts of common law robbery. Counsel was appointed by the court, and three days later guilty pleas were entered in all five cases. A jury was later empanelled to hear evidence and assess penalties. Boykin was sentenced to death on each of the five charges. The lack of any record showing that the trial judge inquired as to whether the defendant clearly understood the options available to him, coupled with the cursory cross-examination conducted by his counsel at the sentencing trial, led the Supreme Court to reverse the convictions. Boykin is unlike the present case, which contains affirmative evidence that Endsley and his attorneys had discussed the case extensively, and that Endsley understood the consequences of either entering a plea of guilty to second degree murder or going to trial on a charge of first degree murder.
Boykin illustrates the necessity for a trial court to make careful inquiry into the knowledge and state of mind of an accused person who pleads guilty. The case does not specify precise rules of procedure for state trial courts to follow, but does require that a court ascertain whether the accused is aware of his constitutional rights and whether he knowingly waives those rights. To the extent that this case may be said to require more careful attention to procedures in state courts, it would appear that Boykin is not retroactive. In McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the court required federal district courts to achieve full compliance with Rule 11 of the Federal Rules of Criminal Procedure.[1] In the McCarthy case a judgment based upon a guilty plea was reversed because the court had not personally addressed the defendant to determine if he understood the nature of the charge against him. At page 1170 the court said,
"* * * First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination * * *."
In Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), the Supreme Court refused to apply McCarthy retroactively. Application of McCarthy to federal courts was limited to cases after April 2, 1969, the date the McCarthy opinion was handed down. The situation in Boykin is analogous to the McCarthy ruling. It is our interpretation of these cases that the United States Supreme Court will not require retrospective application of the holding in Boykin.
There was evidence to support the trial court findings in this case.
The judgment is affirmed.
NOTES
[1] 11.
"Pleas
"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.
"As amended Feb. 28, 1966, eff. July 1, 1966."